**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| CAMEY CONLEY, o.b.o. N.C., ) | |
| ) | CASE NO.  1:12-cv-01367 |
| Plaintiff, ) | |
| ) | |
| v.                 ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff Camey Conley ("Conley"), on behalf of her minor daughter, N.C., challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying N.C.'s claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381 *et seq*.  This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is VACATED and the case is REMANDED for further proceedings consistent with this opinion.

**I.  Procedural History**

On September 27, 2007, an application was filed on behalf of N.C., a child under the age

of eighteen. (Tr. 14.) Her application was denied both initially and upon reconsideration. *Id.* Conley timely requested an administrative hearing. *Id.*

On September 20, 2010, an Administrative Law Judge ("ALJ") held a hearing during which N.C., represented by counsel, Conley, and an impartial medical expert ("ME") testified. (Tr. 14.) On September 24, 2010, the ALJ found N.C. did not have an impairment or combination of impairments that met or functionally equaled the listings. (Tr. 24.) The ALJ's decision became final when the Appeals Council denied further review.

## II. Evidence

### *Personal Evidence*

N.C. was born in March of 2002, and was eight years old and a school-age child pursuant to 20 C.F.R. § 416.926a(g)(2)(iv) at the time of the administrative hearing. (Tr. 17.)

## III. Standard for Disability

To qualify for SSI benefits, an individual must demonstrate a disability as defined under the Act. "An individual under the age of 18 shall be considered disabled . . . if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C).

To determine whether a child is disabled, the regulations prescribe a three-step sequential evaluation process. 20 C.F.R. § 416.924(a). At step one, a child must not be engaged in "substantial gainful activity." 20 C.F.R. § 416.924(b). At step two, a child must suffer from a "severe impairment." 20 C.F.R. § 416.924(c). At step three, disability will be found if a child

has an impairment, or combination of impairments, that meets, medically equals or functionally equals an impairment listed in 20 C.F.R. § 404, Subpt. P, App'x 1; 20 C.F.R. § 416.924(d).

To determine whether a child's impairment functionally equals the listings, the Commissioner will assess the functional limitations caused by the impairment. 20 C.F.R. § 416.926a(a). The Commissioner will consider how a child functions in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for [ ]self; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). If a child's impairment results in "marked" limitations in two domains, or an "extreme" limitation in one domain, the impairments functionally equal the listings and the child will be found disabled. 20 C.F.R. § 416.926a(d). To receive SSI benefits, a child recipient must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100, 416.1201.

A "marked" limitation is one which seriously interferes with functioning. 20 C.F.R. § 416.926a(e)(2)(i). "Marked" limitation means "more than moderate" but "less than extreme." 20 C.F.R. § 416.926a(e)(2)(i). "It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." *Id*.

An "extreme" limitation is one that "interferes very seriously with [a child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). An "extreme" limitation means "more than marked." 20 C.F.R. § 416.926a(e)(3)(i). "It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean." *Id*.

If an impairment is found to meet, or qualify as the medical or functional equivalent of a listed disability and the twelve-month durational requirement is satisfied, the claimant will be deemed disabled. 20 C.F.R. § 416.924(d)(1).

### IV. Summary of Commissioner's Decision

The ALJ made the following findings regarding N.C. in the September 24, 2010, decision:

1. The claimant was born [in] 2002 and was therefore in the "Adolescents (age 12 to attainment of age 18)" age group on September 27, 2007, the date the application was filed (e.g., 20 C.F.R. § 416.926a(g)(2)(v)).[1]

2. The claimant has not engaged in substantial gainful activity since the date the application was filed (20 C.F.R. § 416.924(b) and 416.972).

3. The claimant has the following impairments which are severe either singly or in combination: attention deficit hyperactivity disorder (ADHD) and a learning disorder (20 C.F.R. §416.924(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. §404, Subpart P, Appendix 1, Part A or B (20 C.F.R. §416.920(d), 416.924, 416.925 and 416.926).

5. The claimant does not have an impairment or combination of impairments that functionally equals the listings (20 C.F.R. § 416.924(d) and 416.926a).

6. Because the claimant does not have an impairment or combination of impairments that meets, medically equals any listing or functionally equals the listings, the claimant is not disabled prior to attaining age 18 (20 C.F.R. § 416.924(a)).

(Tr. 17-24.) The ALJ found that N.C. had less than marked limitations in the following five domains: acquiring and using information, attending and completing tasks, interacting and relating with others, caring for one's self, and, health and physical well-being. *Id*. She further

---

[1] The ALJ's statement that N.C. was an adolescent on the date of the application is plainly incorrect. (Tr. 17.)

found N.C. had no limitations in the remaining domain: moving about and manipulating objects. *Id*.

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. Analysis

Conley argues that the decision should be overturned because: (1) substantial evidence proves that N.C. had marked limitations in at least two domains; (2) the ALJ failed to set forth good reasons for rejecting the opinion of N.C.'s treating physician; and, (3) the ALJ evaluated N.C.'s impairments under the "adolescent" age category instead of "preschool" or "school age"

categories. (ECF No. 15.)

*Substantial Evidence*

Conley's first assignment of error – that substantial evidence proves that N.C. had marked limitations in at least two domains – fails to present a cognizable claim, as Conley evokes an incorrect standard of review. An ALJ's decision will be affirmed if it is supported by substantial evidence. It is immaterial if substantial evidence also supports a contrary position. *See, e.g., Kirby v. Comm'r of Soc. Sec.*, 37 Fed. Appx. 182, 183 (6th Cir. 2002) (Commissioner's decision must be upheld if substantial evidence supports it regardless of whether substantial evidence supports claimant's position). Thus, a claimant does not establish a lack of substantial evidence by pointing to evidence of record that supports her position and contradicts the finding of the ALJ. Under other circumstances, the Court would undertake an analysis as to whether there is substantial evidence supporting the ALJ's functionality findings in the six domains. That analysis, however, is unnecessary as remand will be ordered on other grounds.

*Treating Physician*

Conley also argues that the ALJ erred by failing to give sufficiently clear reasons for rejecting the opinion of N.C.'s treating pediatrician, Harry K. Kiefer, M.D. (ECF No. 15 at 22-24.)

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 192 F. App'x 456, 560 (6th Cir. 2006); 20 C.F.R. § 404.1527(c)(2). "[A] finding that a treating source medical opinion . . . is inconsistent with the

7

other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 192 Fed. App'x at 460-61 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.) Furthermore, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[2] Nonetheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406 ("It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record.") (*quoting* SSR 96-2p).

On September 16, 2009, Dr. Kiefer completed a questionnaire concerning medical and functional equivalence. (Tr. 430-33.) Therein, he indicated that he had been N.C.'s treating pediatrician for approximately 6.5 years. (Tr. 430.) He found that N.C. had "marked limitation" in acquiring and using information, attending and completing tasks, interacting and relating with

---

[2] Pursuant to 20 C.F.R. § 416.927(c), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

8

others, and moving about and manipulating objects. (Tr. 430-31.) He further found N.C. had "moderate limitation" in caring for herself and in the category of health and physical well-being. (Tr. 432.) Dr. Kiefer did not answer other questions concerning medications, school attendance, the need for special accommodations, or whether an episodic disorder existed. *Id.* Dr. Kiefer did provide additional comments noting probable ADHD and asthma. (Tr. 433.)

> The ALJ essentially rejected Dr. Kiefer's above assessment explaining as follows:

> Pediatrician Dr. Kiefer completed a very basic form to evaluate the medical and functional equivalence of the claimant's impairments. (9/16/09, exh. 14) Dr. Kiefer opined that the claimant has marked limitations in the first four of the six domains. Unfortunately, the questionnaire which Dr. Kiefer completed provided him with no explanation, definitions or context for evaluating the claimant.[3] Neither the form nor Dr. Kiefer's answers indicate exactly which impairments he was considering, or even of what problems he is aware. Although the form provided room for his answers, Dr. Kiefer provided no additional information regarding side effects of the claimant's medications, problems with her school attendance, special accommodations she requires at school or at home, whether she has an episodic disorder and if so how often and for how long it interferes with functioning. (Exh. 14F, p. 3.)

> While I have taken Dr. Kiefer's opinions as provided on this questionnaire into consideration, I am unable to give those opinions great weight because of the uncertainty of the form itself, and because his description of the claimant as markedly limited in four domains is not supported by the record as a whole or even by his own records.

(Tr. 18.)

The ALJ's characterization of the questionnaire is accurate. Assuming, therefore, that the ALJ did not err by failing to give the assessment of Dr. Kiefer controlling weight, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of treatment relationship and the frequency of examination, the nature and extent of the

---

[3] The questionnaire did define the terms "Marked" and "Extreme." (Tr. 430.)

treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Moore v. Comm'r of Soc. Sec.*, 2012 WL 254139 (S.D. Ohio Jan. 27, 2012) *report and recommendation adopted*, 2012 WL 529778 (S.D. Ohio Feb. 17, 2012) (*quoting Blakley*, 581 F.3d at 406.)

> Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96-2p, 1996 SSR LEXIS 9, at *12 (Soc. Sec. Admin. July 2, 1996). This requirement is not simply a formality; it is to safeguard the claimant's procedural rights. It is intended "to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that []he is not." *Wilson*, 378 F.3d at 544. Significantly, the requirement safeguards a reviewing court's time, as it "permits meaningful" and efficient "review of the ALJ's application of the [treating physician] rule." *Id*. at 544-45.

*Cole v. Astrue*, 661 F.3d 931, 937-938 (6th Cir. 2011).

Dr. Kiefer's opinion cannot be addressed in a vacuum, but should be addressed in light of the evidence of record. The medical record contains over seventy (70) pages of treatment notes from Dr. Kiefer going back as far as February 6, 2003. The ALJ's perfunctory conclusion that Dr. Kiefer's opinion was "not supported by the record as a whole or even by his own records" is insufficient to satisfy the "good reasons" requirement. The ALJ did not discuss the relevant factors, such as the length of Dr. Kiefer's treatment relationship with N.C. and the frequency of examination, the nature and extent of the treatment relationship, or Dr. Kiefer's specialization. The ALJ does conclude that the opinion is not supported and is inconsistent with the record as a whole. However, the ALJ's opinion contains only the barest discussion of the evidence of record and hardly mentions any of the treatment rendered by Dr. Kiefer. Without thorough explanation or analysis, the Court cannot ascertain why the ALJ believes Dr. Kiefer's assessment

was not supported by the record as a whole or by Dr. Kiefer's records. Such a conclusory explanation deprives this Court of the ability to conduct a meaningful review. If district courts were to accept such formulaic conclusions as to why a treating physician's opinion was not entitled to significant weight, the treating physician rule would be rendered a nullity. Rote and conclusory statements that an opinion is "not supported by the record as a whole" or is "inconsistent with the record as a whole," without a supporting explanation or analysis, do not satisfy the "good reasons" requirement.[4] Therefore, the Court finds Conley's second assignment of error meritorious.

### *Incorrect Age Group Analysis*

Conley asserts that the ALJ evaluated N.C.'s impairments under the "adolescent" age category instead of the "preschool" or "school age" categories, thus requiring a remand. (ECF No. 15 at 24-25.) The Commissioner concedes that the ALJ mistakenly referred to N.C. as an adolescent, but argues it was harmless error. (ECF No. 16 at 18-20.) The Commissioner avers that a complete reading demonstrates that the ALJ was clearly aware of N.C.'s correct age. *Id.* at 19. The Court declines to decide whether a remand is necessary based on this error alone. However, the ALJ, in addition to misstating N.C.'s age, specifically employed the standards relevant to adolescents in five of the six the domains. (Tr. 19-22.) Needless to say, upon remand, the ALJ should employ an age appropriate analysis.

---

[4] It bears noting that when considering the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others, the ALJ found that "according to the records and opinions of the claimant's treating physicians and teachers, [N.C.] does not have marked limitation in this domain." (Tr. 20-21.) Dr. Kiefer, the only treating physician identified in the opinion, however, found marked limitations in all three of these domains. Neither party's briefs identify any *treating* physicians, aside from Dr. Kiefer, who offered an opinion as to N.C.'s functional limitations.

**VII.  Decision**

For the foregoing reasons, the Court finds the decision of the Commissioner failed to follow proper procedures.  Accordingly, the decision of the Commissioner is VACATED and the case is REMANDED, pursuant to 42 U.S.C. § 405(g) sentence four for further proceedings consistent with this opinion.

IT IS SO ORDERED.

/s/ Greg White
U.S. Magistrate Judge

Date: March 15, 2013