**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| CAMEY CONLEY, o.b.o. N.C.,      ) | |
|                       ) | CASE NO.  1:12-cv-01367 |
|        Plaintiff,      ) | |
|                       ) | |
|        v.                ) | MAGISTRATE JUDGE GREG WHITE |
|                       ) | |
| COMMISSIONER OF SOCIAL    ) | |
| SECURITY,                ) | |
|                       ) | |
|        Defendant.    ) | **ORDER** |

On May 16, 2013, Plaintiff Camey Conley ("Plaintiff"), through counsel Marcia W.
Margolius ("Margolius"), filed a timely application for attorney fees under the Equal Access to
Justice Act ("EAJA"), 28 U.S.C. § 2412(d).  (ECF No. 20.)  The Commissioner of Social
Security[1] ("Commissioner") filed a response requesting that Plaintiff's motion be denied.  (ECF
No. 22.)  For the following reasons, Plaintiff's motion for attorney fees is GRANTED.

**I.  Procedural History**

The instant action was filed on May 31, 2012.  (ECF No. 1.)  On March 15, 2013, the
Court vacated the decision of the Commissioner and remanded the matter for further
proceedings.  (ECF Nos. 18 & 19.)  Plaintiff subsequently filed a motion requesting attorney fees
pursuant to the EAJA in the amount of $3,403.18, representing 18.85 hours.  (ECF No. 20, Exh.
2.)  The Commissioner opposes the request and asserts that the government's position was
substantially justified.  (ECF No. 22.)

---

[1]  According to the Commissioner, on February 14, 2013, Carolyn W. Colvin became
"Acting Commissioner of Social Security."  (ECF No. 26 at Note 1.)

## II. Analysis

### A. Applicable Law

The EAJA "'departs from the general rule that each party to a lawsuit pays his or her own legal fees' and requires the payment of fees and expenses to the prevailing party in an action against the United States, unless the position of the United States was substantially justified," or special circumstances would make an award unjust. *Howard v. Barnhart*, 376 F.3d 551, 553 (6th Cir. 2004) (*quoting Scarborough v. Principi*, 504 U.S. 401 (2004)); *see also* 28 U.S.C. § 2412(d)(1)(A). It is undisputed that Plaintiff is an eligible and prevailing party.

The "substantial justification standard" is essentially one of reasonableness. *Sullivan v. Hudson*, 490 U.S. 877, 884 (1989); *Pierce v. Underwood*, 487 U.S. 552, 562-565 (1989). The pertinent inquiry is whether the Commissioner's position in initially denying benefits and defending the denial in federal court had a reasonable basis in law and fact. *Pierce*, 487 U.S. 552, 565; *Anderson v. Comm'r of Soc. Sec.*, 198 F.3d 244 (6th Cir. 1999 (unpublished). The reversal of the Commissioner's decision, even on the basis of a lack of substantial evidence, fails to "raise the presumption that the Government's position was not substantially justified" for purposes of the EAJA. *Id.*; *Jankovich v. Bowen*, 868 F.2d 867, 869 (6th Cir. 1989).

The Sixth Circuit has ordered awards of attorneys' fees under the EAJA where the government's litigating position was inconsistent with established precedent. *See, e.g., Caremore, Inc. v. NLRB*, 129 F.3d 365, 371 (6th Cir. 1997). In addition, "Social Security Rulings are binding on all components of the Social Security Administration. These rulings represent 'precedent final opinions and orders and statements of policy and interpretations that [the Social Security Administration] ha[s] adopted.'" *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 834 (6th Cir. 2006) (*quoting* 20 C.F.R. § 402.35(b)(1)).

### B. Commissioner's Litigation Position

The Commissioner argues that her litigation position was substantially justified because the case was remanded merely for an error of articulation by the ALJ and that reasonable people may disagree.

In the Memorandum Opinion and Order, this Court concluded as follows:

> Assuming, therefore, that the ALJ did not err by failing to give the assessment of Dr. Kiefer controlling weight, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Moore v. Comm'r of Soc. Sec.*, 2012 WL 254139 (S.D. Ohio Jan. 27, 2012) report and recommendation adopted, 2012 WL 529778 (S.D. Ohio Feb. 17, 2012) (*quoting Blakley*, 581 F.3d at 406.)

>> Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96-2p, 1996 SSR LEXIS 9, at *12 (Soc. Sec. Admin. July 2, 1996). This requirement is not simply a formality; it is to safeguard the claimant's procedural rights. It is intended "to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that []he is not." *Wilson*, 378 F.3d at 544. Significantly, the requirement safeguards a reviewing court's time, as it "permits meaningful" and efficient "review of the ALJ's application of the [treating physician] rule." *Id.* at 544-45.

> *Cole v. Astrue*, 661 F.3d 931, 937-938 (6th Cir. 2011).

> Dr. Kiefer's opinion cannot be addressed in a vacuum, but should be addressed in light of the evidence of record. The medical record contains over seventy (70) pages of treatment notes from Dr. Kiefer going back as far as February 6, 2003. The ALJ's perfunctory conclusion that Dr. Kiefer's opinion was "not supported by the record as a whole or even by his own records" is insufficient to satisfy the "good reasons" requirement. The ALJ did not discuss the relevant factors, such as the length of Dr. Kiefer's treatment relationship with N.C. and the frequency of examination, the nature and extent of the treatment relationship, or Dr. Kiefer's specialization. The ALJ does conclude that the opinion is not supported and is inconsistent with the record as a whole. However, the ALJ's opinion contains only the barest discussion of the evidence of record and hardly mentions any of the treatment rendered by Dr. Kiefer. Without thorough explanation or analysis, the Court cannot ascertain why the ALJ believes Dr. Kiefer's assessment was not supported by the record as a whole or by Dr. Kiefer's records. Such a conclusory explanation deprives this Court of the ability to conduct a meaningful review. If district courts were to accept such formulaic conclusions as to why a treating physician's opinion was not entitled to significant weight, the treating physician rule would be rendered a nullity. Rote and conclusory statements that an opinion is "not supported by the record as a whole" or is "inconsistent with the record as a whole," without a supporting explanation or analysis, do not satisfy the "good reasons" requirement.

(ECF No. 22 at 9-11.)

The Commissioner contends that Sixth Circuit precedent suggests that her litigation position is substantially justified where the error by the ALJ is only one of articulation as it relates to the weight accorded treating physicians. (ECF No. 22.) The Commissioner relies

3

primarily on a Sixth Circuit decision in *Ratliff v. Comm'r of Soc. Sec.*, 465 Fed. Appx. 459, 460 (6ᵗʰ Cir. 2012).  However, *Ratliff* did not hold that the Commissioner's litigation position is *per se* substantially justified whenever a court remands a case to correct an articulation error.  Instead, that court observed:

> Ratliff also asserts that the district court erred by applying a "per se rule" that the government's position is substantially justified whenever a court remands a case to correct an articulation error.  However, the district court did not refer to a per se rule in its opinion.  Instead, the court relied on *Anderson* and other persuasive authority to find that the Commissioner's decision to defend the ALJ's denial of benefits was substantially justified.  Indeed, ***the court distinguished a case which held that the Commissioner's position was not substantially justified, even though that case also involved a remand to correct an articulation error***.

*Ratliff*, 465 Fed. App'x at 461 (emphasis added).

As such, this Court declines to find that the Commissioner's litigation position was substantially justified.  The regulations themselves require the ALJ to give "good reasons" for the weight ascribed to a treating source's opinion.  20 C.F.R. § 416.927(c)(2).  Frequently, deciding whether the reasons given for the weight ascribed to an opinion satisfies the treating physician rule is no easy task.  The Commissioner's decision to defend an ALJ's determination where he or she offers reasons for the decision may very well be substantially justified in some cases, even if those reasons ultimately fail to satisfy a reviewing court.  In a case previously cited by the Commissioner (but not herein), the Commissioner's litigation position was found to be substantially justified despite a finding that the weight accorded the treating physician was not adequately explained.  *See Saal v. Comm'r of Soc. Sec. Admin.*, 2010 WL 2757554 (W.D. Mich. June 24, 2010) report and recommendation adopted, 2010 WL 2757779 (W.D. Mich. July 13, 2010).  In that case, however, the Magistrate Judge readily acknowledged that the issue was a "close call."  *Id*.  Here, by contrast, the rote and conclusory statements offered by the ALJ did not come close to satisfying the "good reasons" requirement.  The Commissioner is clearly aware that such perfunctory reasoning is routinely rejected as insufficient to satisfy the procedural requirements set forth in the regulations and the Administration's own rulings, and her litigation position was inconsistent with well-established precedent.  While there might be sufficient *factual* evidence in the record to ultimately support a denial of disability, the

4

government's decision to defend a deficient opinion is not thereby rendered *per se* reasonable. The Court finds Plaintiff is entitled to attorney fees under the EAJA.

### C.  Amount of Fees and Payment

Under the EAJA, the amount of attorney fees awarded shall be based upon the prevailing market rates for the kind and quality of services furnished, except that ". . . attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee."  28 U.S.C. § 2412(d)(2)(A).  The Court must review Plaintiff's application for attorney's fees to determine whether the requested fees are reasonable.  *See* 28 U.S.C. § 2412(d)(1)(A), (B); *see also Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  Courts are obligated to prune unnecessary hours from fee petitions because, "[c]ourts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded."  *ACLU v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999).

Notably, the Commissioner does not challenge the rate of the fees requested, nor the number of hours claimed.  (ECF No. 22.)  Neither the fees requested nor the hours expended are unreasonable.  The Court further finds that the evidence submitted demonstrates that an upward departure from the statutory cap of $125 per hour is appropriate.[2]  As such, the Court finds that an award of $3,403.18 representing 18.85 hours, an average rate of $180.54 per hour, is appropriate.  Margolius has attached an assignment agreement between her and Plaintiff, and

---

[2]  Margolius has submitted sufficient evidence justifying an upward departure from the statutory cap.  This includes a report from the Ohio State Bar Association entitled "The Economics of Law Practice in Ohio, Desktop Reference for 2010," indicating that the average hourly billing rate of attorneys in the greater Cleveland area in 2010 was $239, while the median rate was $210.  (ECF No. 20-5 at 24.)  The report also indicates that in the field of administrative law, the average hourly billing rate in Ohio in 2010 was $203, while the median rate was $180.  *Id*. at 25.  In addition, Margolius has submitted affidavits from social security attorneys Paulette Goodwin and Louise Mosher indicating that their hourly rate is $350 per hour.  (ECF Nos. 20-6 & 20-7.)

requests that fees be paid in her care as Plaintiff's assignee.  (ECF No. 20-8.)  Any fees paid can

be offset to satisfy preexisting debt that Plaintiff may owe the United States in accordance with

*Astrue v. Ratliff*, 130 S.Ct. 2521, 2524, 177 L.Ed.2d 91 (2010).  If Defendant's counsel can

verify that Plaintiff does not owe preexisting debts subject to offset, Defendant should direct that

the award be made payable to Plaintiff's counsel pursuant to the EAJA assignment.

### III.  Conclusion

Plaintiff's application for attorney fees under the EAJA (ECF No. 24) is hereby

GRANTED.  This Court authorizes Defendant to make payment to Plaintiff in the sum of

$3,403.18.

IT IS SO ORDERED.

s/ Greg White
United States Magistrate Judge

Date: June 27, 2013